UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:  
Sixty Sixty Condominium Association, Inc.  
Debtor-In-Possession  
_____/

Case No. 16-26187-RAM  
Chapter 11

**SCHECHER GROUP, INC'S AND RICHARD SCHECHER'S VERIFIED RESPONSE IN OPPOSITION TO DEBTOR'S MOTION FOR VIOLATION OF THE AUTOMATIC STAY AND TO COMPEL ACCESS TO ESTATE PROPERTY**

Schecher Group, Inc. and Richard Schecher, by and through their undersigned counsel, hereby file this Response to Debtor's Motion for Violation of the Automatic Stay and to Compel Access to Estate Property (Doc. 13), and state as follows:

Debtor's Motion has no merit and is fraught with misstatements, and untruths. It is brought by the Debtor's president, Maria Velez, who has been engaging in personal vendetta against Schecher Group, Inc., and its principal, Richard Schecher, Sr. (collectively "Hotel Unit Owner", or "HUO"). The Debtor's failed litigation includes two state court actions in Miami-Dade County, *Sixty Sixty Condominium Association Inc v. Condominium Hotel Management Corporation Inc. et. al.*, 2015-019981-CA-01, which has been settled and dismissed, and a prior case, against HUO's predecessor in interest, *Sixty Sixty Condominium Association, Inc. v. Optima Hospitality, LLC.*, 2011-21320-CA-01, wherein the court ruled in favor of HUO's predecessor on assessment and voting issues. (Exhibit 1)

Her new course of action is to raise spurious claims in this Honorable Court including a list of creditors that are in fact not creditors of the Debtor. Only two are creditors of the Debtor, totaling $64,780.52. Interestingly, these two creditors are law firms retained by the Debtor to attack the HUO. The remainder are creditors of the HUO. The HUO is not a creditor of the Debtor

as the Debtor currently does not owe any money to the HUO. As indicated by Debtor's filings, Debtor paid a $50,000 legal fee retainer to its putative bankruptcy counsel rather than use those funds to nearly completely satisfy its debts. Such action evidences the bad faith of the subject Petition.

Finally, the HUO, pursuant to Florida Statutes §718.111 has requested the unit owner account balances to determine if the "current" board members are legitimately on the board or have been deemed to have abandoned their positions by being over 90 days delinquent in their assessments. (Exhibit 2).

Florida Statutes §718.112(2)(n) provides:

(n) Director or officer delinquencies.—A director or officer more than 90 days delinquent in the payment of any monetary obligation due the association shall be deemed to have abandoned the office, creating a vacancy in the office to be filled according to law.

To date, no records have been provided. There is also no evidence that the board noticed and conducted a meeting, obtained a quorum, or even voted to file the instant petition. It is unknown if any notice was provided to the unit owners. Finally, it is doubtful that the Debtor is insolvent. Although financial records have not been produced, HUO believes that the Debtor is collecting enough moneys in assessments to fully satisfy its debts in a timely manner.

The simple fact is that the Debtor is governed by its recorded documents including its Declaration of Condominium. Debtor, specifically its President, are unhappy with the recorded documents. Their prior attempts at stripping the HUO of its property rights by having the Declaration amended by judicial action have failed. The Declaration does provide for amendments by membership voting.

**The Debtor Units**

The Debtor is a condominium association that owns four commercial units and one residential unit within the Sixty Sixty Condominium building. The Sixty Six Condominium operates as a hotel. It is currently closed for occupancy but expected to reopen the last week of December. The management office is open and has been open for at least a month. The residential units may only be used for hotel purposes. Rooms in the hotel program are already being booked for dates between January and April with all indications that the hotel will be sold out for the high season.

The four commercial units owned by the Debtor are referenced in the governing documents by CU-1, CU-2, CU-3, and CU-4. The Debtor also owns residential unit 605. CU-1 is described by Debtor as the "Restaurant Unit". CU-2 is an outdoor terrace contiguous with the swimming pool and patio. CU-3 and CU-4 are rooftop terraces.

CU-1 is located on the third floor. Upon exiting from the elevators, one would pass through fire doors to the third floor corridor. Bordering and open to the corridor is the "Restaurant Unit". (Exhibit 3). Other than the kitchen, air conditioning unit, and dishwasher storage areas, the remainder of the restaurant is open to anyone in the hotel. Significantly, the HUO has a lease agreement with the prior board of directors and has been occupying the space for the past two years. The space has been used for unit owner meetings. HUO does not generate any income from CU-1 but has been attempting to secure a restaurant operator for the space. The HUO improved the space by installing a new floor for the benefit of the building. The subject meeting of December 7, 2016 was not a "private meeting", but rather, a meeting of unit owners. Debtor has complete access to the Restaurant Unit. HUO has never restricted Debtor from using CU-1.

CU-2 (Exhibit 4), CU-3, and CU-4 (both appear on Exhibit 5) are terraces open to all people in the building. They are not revenue generating commercial units. HUO has not employed them

for his own use. On the contrary, HUO, at no expense to the Debtor, cleans and maintains these commercial units on behalf of the Debtor. Any unit occupant (or anyone else in the building for that matter) is entitled to walk on the terraces and enjoy the Miami Beach weather.

**Key fob access**

The key fob system has been in place for many years. The elevator has a security system to restrict access to the floors above the lobby from the general public. The hotel room keys allow access to the elevator for all owners and guests. This is a safety and security issue for the building. Debtor's claims that HUO somehow violated the automatic stay is without merit. HUO has not restricted the Debtor from accessing its units. Debtor's statement in its Motion [D.E. 13 ¶2] that: "It almost goes without saying that, absent access to its Units, the Debtor cannot employ these estate assets to generate income for the estate to benefit all constituencies." is truly absurd. The building is closed. Moreover, even when open, the commercial units generate no income. As to the residential unit, any guest would be provided with a room key.

To the extent the Debtor's representative would want a key to residential unit 605 while the building is closed, one would be provided. HUO, pursuant to Article 16.10 of the Declaration, published rules and regulations and invited owners to make an appointment for access as there were no management personnel onsite and it would be necessary for management to meet the owner at the property to arrange access. Exhibit 6 and Exhibit 7 reflect communications with owners seeking access. Exhibit 8 is an email from Ms. Velez acknowledging the closed building and including pictures of the signage on the door of the closed building.

Never once did HUO deny any owner (including any Debtor representative) access to the property. There was a large sign on the entrance door to the building with a contact phone number for anyone needing access to the building.

Currently, and for at least the past month while the building has been undergoing renovations, management and construction workers are onsite. Any owners that come to the management office for keys to their units are provided same.

### **Conversion of Funds**

Pursuant to Article 12 of the Declaration, HUO has the right and obligation to assess unit owners independently of the Debtor's right and obligation to assess. Paragraph 10 of Debtor's Motion, that "it appears that the Hotel Unit is attempting to collect, directly from unit owners, debts that would properly be payable to the Debtor. Upon information and belief, the Hotel Owner is converting such funds to its own use." is completely false. The Debtor is only entitled to collect a minimal amount of assessments for a few items including insurance. The HUO is entitled to collect assessments for 100% of the shared costs.

### **Requested Relief**

The requested relief must be denied. There has been no stay violation. Access to units has been provided and will continue to be provided pursuant to the Declaration. The $522,219 claim does not exist. HUO has had possession of CU-1 pursuant to a verbal agreement. Having said that, however, CU-1 is open to everyone in the building. HUO has not maintained exclusive control over it. The Debtor has not suffered any damages as there have been no stay violations.

I, Richard J. Schecher, Sr., do hereby certify under penalty of perjury, pursuant to 28 U.S.C. §1746(2) that the above statements are true and accurate to the best of my knowledge and belief.

Dated: December 20, 2016

Respectfully submitted,

_____
Richard J. Schecher, individually and as
President of Schecher Group, Inc.

*Case No. 16-26187-RAM*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically filed with the Clerk of the Court via CM/ECF and that a true and correct copy has been served via the CM/ECF upon: **Thomas M. Messana and Brett D. Lieberman, Messana, P.A., Putative Counsel for Debtor** on this 20th day of December, 2016.

                                                                             Respectfully submitted,

                                                                             Becker & Poliakoff, P.A.
                                                                             *Attorneys for Richard J. Schecher, Sr.,*
                                                                             *and Schecher Group, Inc.*
                                                                             121 Alhambra Plaza, 10th Floor
                                                                             Coral Gables, FL 33134
                                                                             (305) 262-4433 Telephone
                                                                             E-mail: Sdavis@bplegal.com

                                                                             By: /s/Steven M. Davis
                                                                                  Steven M. Davis
                                                                                  Florida Bar # 894249

                                                                             Becker & Poliakoff, P.A.
                                                                             1511 N. Westshore Blvd., Suite 1000
                                                                             Tampa, FL 33607
                                                                              Telephone: (813) 527-3900
                                                                              Facsimile: (813) 286-7683
                                                                              E-mail: lcastellano@bplegal.com

                                                                             By: */s/ Lisa M. Castellano*
                                                                                  Lisa M. Castellano
                                                                                 Florida Bar # 748447

ACTIVE: 9233170_1