UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

IN RE:                        .        Case No. 09-15332-EPK
                              .        Chapter 13
JOSEPH LLEWELLYN WORRELL,.
                              .
        Debtor.              .
. . . . . . . . . . . . . . ..
JOSEPH LLEWELLYN WORRELL,.        Adv. No. 16-01046-EPK
                              .
        Plaintiff,           .
                              .
        v.                   .        Flagler Waterview Building
                              .        1515 North Flagler Drive
EMIGRANT MORTGAGE            .        8th Floor
COMPANY, et al.,             .        West Palm Beach, FL 33401
                              .
        Defendants.          .        March 31, 2016
. . . . . . . . . . . . . ..        12:07 p.m.

TRANSCRIPT OF MOTION TO DISMISS ADVERSARY PROCEEDING AND MOTION
 FOR SANCTIONS AGAINST JOSEPH LLEWELLYN WORRELL AND HIS COUNSEL

BEFORE HONORABLE ERIK P. KIMBALL
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtor:              Markarian, Frank, White-Boyd & Hayes
                             By:  NADINE V. WHITE-BOYD, ESQ.
                             2925 PGA Boulevard, Suite 204
                             Palm Beach Gardens, FL 33410


For Chad Ingram,             Shumaker, Loop & Kendrick, LLP
Saana Ingram and Ilkaa       By:  STEVEN M. BERMAN, ESQ.
Juhani Sysimetsa:            101 E. Kennedy Boulevard, Suite 2800
                             Tampa, FL 33602


For Emigrant Mortgage        Becker & Poliakoff, P.A.
Company:                     By:  STEVEN M. DAVIS, ESQ.
                             121 Alhambra Plaza
                             Coral Gables, FL 33134


Audio Operator:              Cindy Klopp


Proceedings recorded by electronic sound recording, transcript
                 produced by transcription service.
_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@jjcourt.com**

**(609) 586-2311    Fax No. (609) 587-3599**

1          THE COURT:  Next and last case this morning, I think,
2  is it?

3          COURTROOM DEPUTY:  Yes.

4          THE COURT:  Yes.  Worrell against Emigrant Mortgage
5  Company and others.  Good morning, everybody.

6          MR. DAVIS:  Good morning, Your Honor.

7          MR. BERMAN:  Good morning, Your Honor.

8          MR. DAVIS:  Steve Davis on behalf of Emigrant
9  Mortgage Company.

10          THE COURT:  Mr. Davis.

11          MR. BERMAN:  Sorry.  Good afternoon, Your Honor -- or
12  good morning, Your Honor.

13          THE COURT:  Well, it's -- it is technically.

14          MR. BERMAN:  Barely afternoon.

15          THE COURT:  We're an hour late now, yes.

16          MR. BERMAN:  Steve Berman on behalf of Chad Ingram,
17  Saana Ingram and Ilkka Juhani Sysimetsa.

18          THE COURT:  Good morning -- afternoon.  And you don't
19  live on this side of the state, do you?

20          MR. BERMAN:  I do not live on this side of the state.

21          THE COURT:  That's what I thought.  Welcome, yes.

22          MR. BERMAN:  Thank you, Your Honor.

23          MS. WHITE-BOYD:  Good afternoon, Your Honor, Nadine
24  White-Boyd on behalf of the debtor/plaintiff Joseph Worrell.

25          THE COURT:  All right.  So we have two motions to

1    dismiss.  Are there any agreements before I hear about the

2    motions?  Yes.

3         MR. BERMAN:  No agreements yet, Your Honor, and I

4    know that the status of pleadings has changed a little bit.

5    I'm happy to give the Court a brief overview and explain why

6    I'm still here given the status of play and that might set up

7    the issues for the others to argue, as well, if that's

8    acceptable.

9         THE COURT:  That's fine with me.  You should all know

10   I've read everything that's on file unless you filed it

11   yesterday.  All right.  Go ahead.

12        MR. BERMAN:  Thank you, Your Honor.

13        A couple of things briefly and the time line I think

14   is important and I won't go through the expanded version of the

15   time line, but a couple of key points.  The foreclosure final

16   judgment was entered October 20 of 2008.  The bankruptcy

17   petition followed on March 26, 2009.  The bankruptcy case was

18   first dismissed on July 1, 2009.  There was a hearing on a

19   motion to reinstate on August 27, 2009 and the foreclosure sale

20   followed on August 31, 2009 primarily, we believe, because

21   there was no notice given of the motion to reinstate and no one

22   was here on behalf of the creditor, and I'm sure creditor's

23   counsel can speak to that.

24        At the hearing on August 27th, you indicated that you

25   would reinstate the case, but no order was entered until the

1  day after the foreclosure sale, and I think that's critical.

2  The foreclosure, the case was --

3       THE COURT:  Let me go back to that.  You might be

4  surprised to know that I remember this quite clearly.  It was a

5  very interesting circumstance because the debtor had filed a

6  notice which I interpreted as being something -- this is before

7  that motion to reinstate -- being something related to the

8  Soldiers' and Sailors' Service Act.  But when you read what's

9  attached to that notice, it's -- I don't even know how to

10 describe it.  I have no idea what one of the documents says.

11 It's just a bunch of gibberish.  And the act is very, very

12 specific, and so the Court did not interpret it as a request

13 for implication of the stay under federal statute, not the

14 automatic stay, but the stay applicable to service members who

15 have been deployed because one could not tell whether, for

16 example, it was a letter from the commanding officer, one of

17 the things that's required.

18      And so we have this request filed to reinstate the

19 case which is really coupled with a request for relief under

20 that act and then I had a hearing and two things happened.  One

21 was the case would be reinstated and the Court would implement

22 a stay for 90 days which is the minimum permitted under the

23 act.  So that's where I was at that point and I had that

24 hearing, but the order was not entered right away and that's

25 where you are in your presentation.

1          MR. BERMAN:  Thank you, Your Honor.  So we have a

2   foreclosure sale on August 31, 2009.  Your order is entered on

3   the docket on September 1, 2009 and --

4          THE COURT:  And still the lender doesn't have notice.

5          MR. BERMAN:  I don't know if there was a -- there's

6   nothing in the record or in the pleadings to suggest that there

7   was some communication between the debtor and the bank at this

8   point.  At this point, my clients don't even --

9          THE COURT:  Exist.  Well, they exist, but they're

10  interested yet.

11         MR. BERMAN:  They don't have an interest in the

12  outcome of the litigation.

13         THE COURT:  Understood.

14         MR. BERMAN:  On November 11, 2010, again, the case is

15  dismissed, but this time it's dismissed because you deny a

16  Chapter 13 confirmation, you dismiss the case.  There are two

17  subsequent motions to reinstate the case, both of which are

18  denied.

19         THE COURT:  The debtor is represented by counsel at

20  the time that the case is dismissed.  It was during a regular

21  Chapter 13 calendar.  I remember counsel being present here.

22  The trustee asked through counsel -- actually -- it was

23  actually the trustee, I think.  No, it wasn't.  It was through

24  counsel that the case be dismissed and the debtor, again

25  through counsel, was unable to oppose the request.

1            MR. BERMAN:  So we fast-forward.  There's State Court
2   litigation which intervenes at this point.  There are various
3   motions to vacate the foreclosure of final judgment, and I'm
4   going to get to that in just a second.  And the State Court
5   denies the various motions to sort of set aside the foreclosure
6   final judgment and ultimately --
7            THE COURT:  In fact, in which the existence of the
8   bankruptcy and the potential impact of the stay and the federal
9   statute were argued.
10            MR. BERMAN:  That -- not only argued, raised and
11   argued, and you asked that question on December -- the December
12   hearing I think on the 15th of 2015.  You didn't get a straight
13   answer.  I was going to give you a straight answer today, but
14   you've already figured that out.
15            THE COURT:  And not only raised and argued, but ruled
16   on and then appealed.
17            MR. BERMAN:  Appealed to the Fourth Circuit.  The
18   judgment or the determination of the State Court was affirmed
19   and then there was a subsequent appeal to the Florida Supreme
20   Court and that case was dismissed, that appeal was dismissed.
21   So why don't -- how do my clients get involved?  Well, on
22   September 10th, 2015, there's a sale of the property to my
23   clients, some five years after your second dismissal of the
24   case and my clients improved the property.  The property had an
25   unfinished kitchen, it had unfinished flooring, it didn't have

1  appliances.  My clients improved the property.  And subsequent

2  to their acquisition and the commencement of their

3  improvements, on November 18, 2015, the motion was filed before

4  Your Honor to reopen and file an adversary proceeding to

5  address these issues.

6         I wanted to give you that background because you said

7  at the hearing on December 16th, 2015 some very, very important

8  things that bear on what was going on and on Page 23 of that

9  transcript, I think you've already pointed this out, I have to

10 let you know that if the issues were raised in the State Court,

11 the State Court had concurrent jurisdiction over the issue, and

12 I could not disagree with them.  That's why I'm asking if the

13 issues were raised and you didn't get a straight answer.

14        We weren't involved at that time because the motion

15 that was filed was not noticed to my clients and attached

16 interestingly to the adversary complaint that you allowed the

17 debtor to file is the actual motion to set aside the

18 foreclosure sale and for a stay of proceedings.  That was filed

19 in State Court on September 2, 2009 and the debtor states in

20 that motion that the Bankruptcy Court entered an order

21 reinstating the case.  A suggestion of Bankruptcy was filed

22 with this Court.  The automatic stay issue was raised and we

23 pled in our motion to dismiss the adversary complaint that was

24 filed against the bank and our clients that, obviously, the

25 State Court had concurrent jurisdiction over determinations of

1 the automatic stay.

2       Well, we file a motion to dismiss which you've read
3 and we also served a Rule 9011 motion for sanctions.  That
4 motion for sanctions was served more than 21 days before we
5 filed it.  In fact, we served it on February 19th, 2016 and we
6 didn't file it until March 23rd, 2016.

7       Now, in the interim, I will advise the Court that the
8 debtor agreed to dismiss my client -- my clients from the
9 adversary proceeding.  When we followed up to confirm that not
10 only would my clients be dismissed, but that there would be no
11 relief against the bank to vacate the foreclosure judgment and
12 affect certificate of title, we were told that, no, the
13 litigation would proceed against the bank as it relates to
14 title.

15       As this Court is probably aware, my clients will
16 never have marketable title if you undo the foreclosure sale
17 and final judgment.  We advised, and I spoke with counsel
18 earlier today, that it's no problem if they want to pursue a
19 362(k) motion for sanctions against the bank if they think
20 that's appropriate and they want to request monetary damages,
21 but if they go against any party to undo that sale and effect
22 title, that's the critical link in the chain of title that will
23 affect my client's interest.

24       So we were surprised to see not that my clients were
25 dismissed from the adversary complaint through the amended

1    complaint, but that relief was still being sought effecting an
2    interest in title.   I guess technically we don't have standing
3    today maybe to argue our motion to dismiss because the
4    complaint's been amended, but the problem now is, we're going
5    to have to move to intervene in the second complaint and argue
6    another motion to dismiss because they're attacking title.   You
7    told them very clearly if the property was sold to a third
8    party they could not attack title.   You told the debtor that on
9    December 16th of 2015.   That's exactly what they're doing.
10   We'd like all title claims to be dismissed by this Court.

11            If there is a motion or a contested matter or even an
12   adversary proceeding directed just to a 362(k) issue, we don't
13   have any interest in that issue, but my clients should not have
14   to defend title in this proceeding, and we did file our motion
15   for sanctions.   We have not documented the quantum of those
16   sanctions, but we do think they're appropriate under the
17   circumstances and can certainly follow whatever procedures
18   to --

19            THE COURT:  And the amendment was not timely filed.
20            MR. BERMAN:  The amendment was not timely filed.  We
21   did provide an enlargement of time to respond to the demand and
22   the amendment came after that time passed.

23            THE COURT:  Thank you.
24            MR. BERMAN:   Thank you, Your Honor.
25            THE COURT:  Yes.

1              MR. DAVIS:  Hi, Judge, Steve --

2              THE COURT:  Probably best for you to respond to both

3    because they're parallel, correct?  Yes.

4              MR. DAVIS:  And I'll not repeat the documents because

5    I adopt all of their arguments, as well.  I just wanted to

6    point out a couple of things, Your Honor, on behalf of Emigrant

7    Bank.  I've lived through this case since its inception in

8    2007.  One of my longest cases, although I did have one at one

9    point that was 14 years, but this one is either second or third

10   in the length of foreclosure actions, and we've had numerous

11   appeals, all unsuccessful, going to the Fourth DCA.  We've had

12   a writ of cert going to the Florida Supreme Court, another one

13   going to the United States Supreme Court.  Delay, delay, delay.

14   The --

15             THE COURT:  I will note to the extent this is

16   important and it might be, not a single order in this court has

17   been appealed and that --

18             MR. DAVIS:  In Bankruptcy Court.

19             THE COURT:  In the Bankruptcy Court, and I think

20   that's important because that means the debtor gave up rights

21   to challenge a variety of findings and rulings made here in the

22   Bankruptcy Court.  Go ahead.

23             MR. DAVIS:  One thing I wanted to point out about

24   the --

25             THE COURT:  Oh, and this is not the debtor's first

1 counsel, I might add.

2          MR. DAVIS:  He's had numerous.

3          THE COURT:  Both counsel -- right, there was prior

4 counsel in the Chapter 13 case.  Both lawyers involved on the

5 debtor's side are people with good reputations before the

6 Court.  Go ahead.

7          MR. DAVIS:  One thing I wanted to point out is the

8 Serviceman's Civil Relief Act.  It's sort of a tangential

9 issue, but I want to address one thing.  The stay from that is

10 only -- can only be granted prior to the entry of a final

11 judgment, and he's raised this argument in Circuit Court many

12 times that he's entitled to stays and it was rejected because

13 final judgment was entered and what the relief act says is that

14 once judgment is entered the serviceman has no interest in the

15 property.  So no further stay should be granted.  But that's a

16 separate issue.  I just wanted to point it out to the Court.

17          THE COURT:  Right.  Well, the statute isn't just with

18 regard to property --

19          MR. DAVIS:  Yes.

20          THE COURT:  -- it's any action, and once judgment is

21 entered it's worded in the reverse, until entry of judgment you

22 may --

23          MR. DAVIS:  Yes.

24          THE COURT:  Right.

25          MR. DAVIS:  It's basically game over once the --

1          THE COURT:  Yes.

2          MR. DAVIS:  -- judgment.  Okay.  So going back to

3   August 27th, I pulled the transcripts from the August 27, 2009

4   hearing, as well as the December 16, 2015 hearing.  On the

5   August 27, 2009 hearing, at that point there was no bankruptcy

6   stay in effect.  The case was dismissed, a motion to reinstate

7   the bankruptcy was filed.  It was heard on August 27th and Your

8   Honor asked, this is on Page 4, Line 8 of the transcript, was

9   the hearing noticed, did you provide notice, and the attorney's

10  response was, no, I did not.  I can tell you, swear me in if

11  you want, it's very clear we did not get notice of a hearing.

12  We had no idea this hearing was going on.  The first -- so our

13  sale went forward because why wouldn't it?

14          A few days later, or actually it was I think about a

15  week later we received a stay notice or the reinstatement

16  notice of the case, the order that wasn't issued until after

17  the sale on September the 1st, and it wasn't served upon us for

18  a couple days after that.  I think it was September 3rd when

19  they actually the certificate of service says it was mailed and

20  we didn't get it for a couple days after that.  So we had no

21  idea at the time.

22          The case law that I cited, the Hill case is right on

23  point that says if you're not noticed -- I'm sorry, that one is

24  right on point that an order vacating -- an order dismissing a

25  bankruptcy case doesn't reinstate retroactively to the

1  dismissal.  So to the extent that an order was entered by this
2  Court on September 1st does not operate retroactively to when
3  the case was originally dismissed.  It's effective on that date
4  that is --
5            THE COURT:  There's even case law that says an order
6  vacating dismissal does not have that impact, meaning that the
7  automatic stay is not retroactively imposed.
8            MR. DAVIS:  Yes.  That's correct.  So --
9            THE COURT:  I know.
10           MR. DAVIS:  -- there's no violation of the automatic
11  stay because at the time of the sale there was no stay in
12  effect.  Arguably, I suppose, they could say, well, there was
13  an oral ruling by the Court, but the other case that I cite,
14  the Hill -- the Brown case is on all fours, I mean, almost an
15  identical situation where the party was not provided notice of
16  the hearing and, therefore, the stay was -- the vacating the
17  stay was not effective against that party until the written
18  order was entered.
19           THE COURT:  And that's Judge Williamson?
20           MR. DAVIS:  Yes.  Yes, Your Honor.  So I wanted to
21  point those two things out that there's absolutely no stay
22  violation.  Everything that we did was -- and we waited after
23  Your Honor's order was entered, even though we could have
24  objected to it after the fact and perhaps gotten it vacated, we
25  said, you know what, let's let it ride and we won't take any

1  action and we didn't take any action until Your Honor's stay

2  order, the one, the written one, until that stay expired, then

3  we took further action.  But we didn't do anything during that

4  interim and nothing was alleged in the complaint.  The only

5  allegation in the complaint of a stay violation is that we sold

6  the property the day before Your Honor's order was entered and

7  clearly on its face that's not a stay violation.  If we did it

8  the day after, it'd be different story, but that's not what

9  happened.

10         So on December 16th I also got the transcript for

11  that hearing, December 16th of this year where --

12         THE COURT:  Last year, 2015, yes.

13         MR. DAVIS:  2015, yes.  And what Your Honor ordered

14  after it was -- it looked like it was a fairly lengthy hearing.

15  I was not there.  The case is reopened solely to permit pursuit

16  of violation of the automatic stay under Section 362 and that

17  is it.  That's on Page 27 of the transcript.  Because my order

18  imposing the stay under the SCRA happened a day after the

19  foreclosure sale, then your case was dismissed after that stay

20  expired, understand.  Mr. Worrell said I understand.

21         Despite that, the case was reopened only to pursue a

22  362 violation, to file their complaint seeking relief against

23  Emigrant and seeking relief against the new owners that goes

24  beyond just seeking sanctions for stay relief.  But even this

25  new complaint -- and Your Honor also mentioned in there that

1  you cannot set aside the sale.  You mention in the December

2  16th hearing that you would not do that.  Only for this 362

3  stay relief.

4          So in this amended complaint --

5          THE COURT:  Which I expected to be a request for

6  damages, by the way, but go ahead.

7          MR. DAVIS:  Right.  To the extent there was a stay

8  violation and we say there wasn't.  And based on their

9  allegations there wasn't.  Their amended complaint eliminated

10 the purchasers, left them out of the case.  It says right in

11 the amended complaint the same as the regular, the original

12 complaint that August 27th was a hearing, an order was entered

13 September 1st, on August 31st we had the sale despite the order

14 of the Court emanating from the hearing held five days earlier.

15 Well, the order didn't come out until after.

16         All right.  So Count 1 is declaratory relief, declare

17 that there was a stay violation.  Count 2 is for willful

18 violation which certainly there couldn't have been because

19 there was no stay.  And then where it gets sketchy is Count 3,

20 they want to cancel the deed and affect the title which

21 according to Your Honor's order that's relief you would not

22 provide them and they were instructed not to seek that, that

23 the only thing it could be reopened for is the stay violations.

24 Instead, they want to cancel the deed which even though they

25 dismissed by not naming them in the amended complaint, the

1  purchasers, they have to intervene because it affects their

2  title and that pleading was not authorized by the Court seeking

3  that additional relief.  It was only for purported stay

4  violation.

5       We think the case should be dismissed with prejudice

6  because they based upon the orders and the history, there's no

7  way in the world that they could set forth a valid complaint

8  for a stay violation.  I know Your Honor read the rest of the

9  motion, so I'll rest on the pleadings.

10       THE COURT:  Very good, thank you.

11       MR. DAVIS:  Thank you.

12       THE COURT:  Ms. White-Boyd.

13       MS. WHITE-BOYD:  Good afternoon, again, Your Honor.

14  Nadine White-Boyd on behalf of Joseph Worrell.  First, I'll

15  address the counsel's -- the Ingram, the third party, I'm

16  sorry, the Ingram's motions to dismiss which --

17       THE COURT:  Right, which now you filed an amended

18  complaint, but Mr. Berman points out that you're still asking

19  to wipe out the source of their title.

20       MS. WHITE-BOYD:  Correct, Your Honor.  And I'll

21  address that and I won't go all into the history that Mr.

22  Berman just mentioned, but just to clarify as far as our

23  discussion, not with Mr. Berman, but with his associate

24  indicating that we would be willing to dismiss the case as to

25  the Ingrams and Sysimetsa, however, based on that discussion I

1 think there must have been some misunderstanding or
2 miscommunication because my understanding was that they wanted
3 it to be dismissed in its entirety.  As a result of asking that
4 the case be dismissed in its entirety, we were not able to
5 essentially submit an agreed order to the Court dismissing on
6 the basis as far as going for title, seeking reversal of the
7 judgment or seeking reversal of the sale.  We were -- we did
8 not discuss that in specifics.  We simply discussed dismissing
9 them and their option was no dismissing the case in its
10 entirety.

11          So I think based on that miscommunication is why we
12 are here today, Your Honor, and why they went forward with
13 filing their motion for sanctions.  Had we been clear, I think
14 we would have been able to resolve that issue.  And we spoke
15 earlier this morning and nothing was resolved.  So we have a
16 case here before you.

17          So with respect to the motion to dismiss, the reason
18 for filing and including these defendants were because looking
19 at the case and filing a motion for violation of automatic
20 stay, our position is that it would affect these purchasers.
21 And if it would affect these purchasers, then it made -- would
22 they then be considered indispensable parties to this action
23 that needed to be notified of the action.  Subsequently after
24 becoming aware of not what -- not the order that was actually
25 entered, but the proceedings that happened and what the -- what

1 Your Honor stated on the record with as far as you are not

2 going to be setting aside the sale, knowing that then, yes, it

3 made sense to -- that maybe we didn't need to include them and

4 whatever order that the judge -- Your Honor was -- would be

5 inclined to render would have no impact subsequently on these

6 parties because you are not inclined to set aside the sale.

7         THE COURT:  Well, didn't -- even the amended

8 judgment, all of which is based on a violation of the stay

9 which would make the sale void, you want me to find that the

10 sale didn't happen.  Well, if the sale didn't happen, that

11 means that the vendor to Mr. Berman's client didn't have title.

12 Doesn't that mean that they don't have title?

13         MS. WHITE-BOYD:  That is correct, Your Honor.  So

14 essentially we would have to amend the complaint to remove any

15 request to have the sale be voided because that -- any request

16 seeking that would affect Mr. Berman's clients.

17         THE COURT:  Right.  And there's not a 362(k) style

18 request for damages, is there?  I mean, it does say willful

19 violation.  Does it actually cite 362(k)?  I don't remember.

20         MS. WHITE-BOYD:  No.  No, Your Honor, it doesn't cite

21 362(k), but it asks for damages.

22         THE COURT:  Right.  And this is an individual, why

23 wouldn't you cite 362(k), I mean, assuming that it applies?

24         All right.  Let's just go back to the -- some of the

25 most basic arguments here.  Why was there -- the very first

1  count even in the amended complaint is to ask the Court to
2  determine there was a violation of the stay.  The stay was in
3  effect how?  I mean, the automatic stay.
4      MS. WHITE-BOYD:  Well, Your Honor, and I know the
5  Kruger case that was cited, Your Honor, which very different
6  facts from this case, Your Honor, but essentially talks about
7  unique situations that warrant that there may be -- that a sale
8  could be set aside.  In the first count, that would affect the
9  Ingram, the new purchasers of the property.
10     THE COURT:  Okay.  Let me focus on something --
11     MS. WHITE-BOYD:  So we would have to essentially --
12     THE COURT:  -- really simple.  Why -- how can you say
13 the automatic stay was in effect at all?
14     MS. WHITE-BOYD:  Because, well, Your Honor, the
15 automatic stay was not in effect, but because of unique
16 situation concerning the Sailors' Servicemembers Civil Relief
17 Act, because essentially Mr. Worrell was on current military
18 duty, he --
19     THE COURT:  Didn't he argue that in the State Court
20 multiple times?  So am I supposed to say the State Court,
21 including the Fourth Circuit Court of Appeals, was wrong?
22     MS. WHITE-BOYD:  Well, Your Honor, I know he had
23 several arguments and he had counsel in the State Court and I
24 don't know what happened there and, you know, get the --
25     THE COURT:  Well, let me just say it appears that it

1  was argued, but even if it wasn't, collateral estoppel would

2  attach because it should have been argued.  It was an

3  available, one would think, an available defense.  If you don't

4  raise it, you waive it, you're bound by it.  So it doesn't

5  actually matter whether it was litigated in the State Court,

6  but I'm pretty sure it was.

7          MS. WHITE-BOYD:  I know there was a -- and I don't

8  know if it was a hearing, Your Honor, in 2014 where his counsel

9  filed a motion related to the SCRA and that motion Emigrant

10  objected to and then there was an entry of an order on --

11  denying the motion --

12          THE COURT:  But, you know, see --

13          MS. WHITE-BOYD:  -- to set aside the sale.

14          THE COURT:  Let's just say for a moment I hadn't

15  limited the debtor's ability to file a complaint based on a

16  stay violation under Section 362.  Let's say I hadn't done

17  that.  Let's just set that aside for a moment.  The complaint

18  does not actually say the action was in violation of another

19  federal statute.  It doesn't say that.  It says it's a stay

20  violation.  So why do I care about the Soldiers' and Sailors'

21  Relief Act in this context?

22          MS. WHITE-BOYD:  Because, Your Honor, we have to,

23  like I said in the case where the Kruger were saying based on

24  the unique facts in this situation.  I understand the complaint

25  did not bring that forth, Your Honor, but it's -- it is a fact

1 and that is essentially where in this situation where on August

2 31st they sold the property, Emigrant was the successful

3 purchaser.  On September 1st, the order, Your Honor's order was

4 entered.  On the very next day, the debtor's counsel filed a

5 motion to set aside the sale that happened.  They had at

6 that --

7            THE COURT:  Based on my order.

8            MS. WHITE-BOYD:  Correct.

9            THE COURT:  Exactly.  And then the State Court ruled

10 on it.

11            MS. WHITE-BOYD:  They -- I didn't see a ruling on

12 that September 2nd motion.

13            THE COURT:  There's never been a ruling asking that

14 the sale be set aside.  There's been multiple rulings on

15 whether the sale should be set aside.

16            MS. WHITE-BOYD:  On the September 2nd motion that was

17 filed?

18            THE COURT:  There -- and the State Court has

19 repeatedly ruled on Mr. Worrell's motions with regard to that

20 sale and the appeals that arose therefrom.  It -- if he didn't

21 actually have litigated in the State Court exactly the issue

22 that you're pointing to which is that this Court reinstated a

23 bankruptcy case and the sale should be avoided, he should have.

24 But I know that he has.  There's actually been multiple rulings

25 in the State Court, isn't that accurate, gentlemen?

1          UNIDENTIFIED ATTORNEY:  Yes, Your Honor.

2          THE COURT:  Yes.

3          UNIDENTIFIED ATTORNEY:  Multiple rulings.

4          THE COURT:  It's already been ruled on.  I don't know

5     how I could possibly -- I can't, as I said in December,

6     disagree with the State Court except in unbelievably limited

7     circumstances which don't arise here.  There's Rooker-Feldman

8     and there's also res judicata concerns and how can I rule

9     differently?  He's already litigated it over and over again.

10         MS. WHITE-BOYD:  Well, Your Honor, I think here the

11    fact that Emigrant and I understand the issue concerning the

12    Servicemembers Relief Act has been litigated.

13         THE COURT:  And the automatic stay issue.  But even

14    if it hadn't, how does the stay exist on the date of the sale?

15    That's what I'm asking.

16         MS. WHITE-BOYD:  And I understand the <u>Hill</u> case and

17    the <u>Brown</u> case which are very similar as facts here.  I think

18    the difference here is that even though in this case Emigrant

19    became aware of the sale a day later, at least according to the

20    docket on September 2nd, two days later and --

21         THE COURT:  They became aware -- the sale happened --

22         MS. WHITE-BOYD:  I'm sorry, they became aware of the

23    case being reinstated.

24         THE COURT:  Not before the order was entered.  Not

25    before the sale was completed.

1          MS. WHITE-BOYD:  That's correct.

2          THE COURT:  Sale completed.  It was after the sale

3  was completed.

4          MS. WHITE-BOYD:  That is correct.

5          THE COURT:  And you're saying they had a duty to undo

6  the sale?  Instead, they just waited for the 90 days for expire

7  and the case to be dismissed yet again --

8          MS. WHITE-BOYD:  That is --

9          THE COURT:  -- then they did something.

10          MS. WHITE-BOYD:  That is correct, Your Honor.

11          THE COURT:  And then your client litigated over and

12  over with them in the State Court and it got -- and lost

13  repeatedly.

14          MS. WHITE-BOYD:  But because -- and I understand what

15  Your Honor is saying with respect to the Servicemembers Civil

16  Relief Act was litigated several times, but going back to just

17  the time frame of when the sale took place where essentially

18  the Court -- essentially he was on military duty, nothing

19  should have been happening whether it's in the State Court or,

20  you know, the foreclosure sale should never happen.

21          THE COURT:  Okay.

22          MS. WHITE-BOYD:  Attorney's position --

23          THE COURT:  The Serviceman's Act is not

24  self-effectuating.

25          MS. WHITE-BOYD:  Correct.

1          THE COURT:  The Court can do things on its own, it
2    says so right in the statute, or someone needs to file a
3    request.  The serviceperson needs to file a request and there
4    are several things that need to be presented in order to obtain
5    relief.  The motion to reinstate, in effect, asked for the
6    Court to impose the Serviceman's stay, as well, which I did.
7    But it wasn't effective until the 1st of September and when a
8    Court effects the stay, it only matters in that court.  I don't
9    tell people that it's affecting other courts.  You need to go
10   to that other court and ask for it.

11         It's not like the automatic stay.  The automatic stay
12   has effect as a result of a statute in any matter that is
13   implicated in that provision, actions against the debtor,
14   actions against the debtor's property and the like.  But when
15   you ask a Court to recognize the stay and in this case I
16   believe I stayed the present bankruptcy at that time for the
17   minimum 90-day period, that doesn't say anything else.  That
18   stay does not go and jump into another court.  He has to go
19   there and argue it and he did, he did argue it over and over
20   again and he lost over and over again.  I don't know why that
21   happened.

22         I'll tell you that what he filed in this court was
23   marginal at best in terms of satisfying the statute.  The
24   initial thing he filed I read it over and over again, I tried
25   blocking out words, it was like a cipher.  I have no idea, to

1  this day, I have no idea what it says.  I read it again

2  yesterday or two days ago.  What he filed thereafter was very

3  marginally an appropriate request for relief on notice to

4  nobody, by the way, and I granted it.  So he got what he

5  wanted, but it was too late and I didn't take any action in my

6  case during those 90 days after the order was entered.  Nothing

7  at all happened here.

8          So there was no violation here.  If he asked for

9  relief in the State Court and didn't get what he wanted, he

10 should have appealed, which he did, and he appealed multiple

11 times and he continued to lose.  I'm not permitted to disagree

12 with the Fourth Circuit Court of Appeals I believe it was on

13 their multiple orders or the Florida Supreme Court's decision

14 to dismiss the matter.  I guess something was untimely.  But --

15 so where do we go from there?  I don't know how we have a

16 complaint because there wasn't a violation of the stay because

17 there was no stay.

18         MS. WHITE-BOYD:  Well --

19         THE COURT:  It's a difficult case.

20         MS. WHITE-BOYD:  Your Honor, I still am of the

21 position that we need to look and I understand we go -- I'm

22 going -- if I'm going back in circular by saying the SCRA, but

23 that two-day window of time from the -- well, two-day window of

24 time from the foreclosure sale to the State Court filing on

25 September 2nd and admittedly, yes, they were not present at the

1  August 27th hearing where it was ruled and maybe counsel needed

2  to take further action to ensure that the sale did not go

3  forward because they did know that the sale was going to happen

4  on --

5           THE COURT:  Well, hold on, wait a minute.  No.  They

6  didn't -- counsel for Emigrant -- there's nothing to suggest

7  anywhere in the record, including in the complaint, that

8  Emigrant --

9           MS. WHITE-BOYD:  Not counsel for Emigrant.

10          THE COURT:  -- or its counsel knew that Mr. Worrell

11 had asked for the order that I entered the day or two after the

12 sale.

13          MS. WHITE-BOYD:  That's correct.  Not --

14          THE COURT:  Right.

15          MS. WHITE-BOYD:  -- counsel for Emigrant, Your Honor,

16 debtor's counsel maybe needed to do something, Your Honor,

17 but --

18          THE COURT:  And he's bound by whether or not his

19 counsel did the right thing at that time.  That -- it is

20 attributed to him under the rules of agency.  If he doesn't do

21 the right thing and there's not due process, doesn't get to

22 magically go back in time and pretend that it didn't happen

23 that way.  I mean, they didn't know, they couldn't have stopped

24 the sale, the sale happened, that's the way it is.  There was

25 no stay in place.

1          You know, it's interesting, though, I'm just curious.
2    Let's say the debtor got exactly what he wanted.  Wouldn't they
3    have the right to resell the property?  He's been in default
4    for a decade.
5          MS. WHITE-BOYD:  Well, Your Honor, let's say, I mean,
6    if they had the right to resell the property, ultimately that's
7    what they should have done.  They should have vacated the sale
8    and -- or set aside --
9          THE COURT:  You don't have to vacate a sale that
10   wasn't void.
11         MS. WHITE-BOYD:  Well --
12         THE COURT:  It's not void.
13         MS. WHITE-BOYD:  -- just -- well, it's not void, but
14   essentially they would -- we don't know.  Mr. Worrell had a
15   bankruptcy plan in place.  He was paying into his --
16         THE COURT:  He could not confirm.  He was represented
17   by counsel who has, as you -- you know who it was, it's someone
18   with substantial experience --
19         MS. WHITE-BOYD:  Right.
20         THE COURT:  -- in Chapter 13.  And the plan could not
21   be confirmed.  He was behind in payments.  He doesn't get to
22   argue that he is not entitled -- not required to make payments
23   under a Chapter 13 plan.
24         MS. WHITE-BOYD:  Well, I don't want to argue that
25   point, Your Honor, because, I mean, just from documentation it

1 appears that he did have the money because it was all refunded

2 to him and he had those funds in 2010, but it may have been

3 another issue why the plan could not have been confirmed based

4 on the amount of monies that he had in the plan.  So, Your

5 Honor, whether or not ultimately they would have been able to

6 sell the property would be really -- it really comes down to

7 what would have happened if that plan had been confirmed and

8 then not -- and then him not paying under the plan.  But he was

9 paying to the trustee and there was a plan on there.  I think

10 there were some, I look at the plan and there were some issues

11 with the plan, but there was monies that he indicated what

12 needed to be paid.  But there were other issues the trustee may

13 have had which ultimately led to the case being dismissed.

14 It's --

15        THE COURT:  Okay.  I don't remember the exact

16 circumstances.

17        MS. WHITE-BOYD:  Right.  So I don't want to argue

18 that.

19        THE COURT:  All I remember, it was Mr. Fisher, wasn't

20 it?

21        MS. WHITE-BOYD:  I -- well, I believe Mr. --

22        THE COURT:  At that point?

23        MS. WHITE-BOYD:  -- Fisher was involved for a very

24 short time, Your Honor.

25        THE COURT:  I am pretty sure Mr. Fisher was

1  physically present in the courtroom at the time the matter came

2  for confirmation and the trustee asked that the case be

3  dismissed and he was unable to provide any substantive

4  response.

5          MS. WHITE-BOYD:  Correct.

6          THE COURT:  And then the --

7          MS. WHITE-BOYD:  Right, from what I have seen, Your

8  Honor, that appears to be.  But, like I said, just from the 341

9  and record, it -- I mean, the trustee essentially said what

10 monies she had, but didn't know what to do with it, so that's

11 why I'm -- and based on the plan that's on the record, that's

12 why I'm led to believe that I can't really argue that and it's

13 not up for argument, but --

14         THE COURT:  No.

15         MS. WHITE-BOYD:  -- it appears that there may have

16 been other issues why the case was --

17         THE COURT:  Okay.

18         MS. WHITE-BOYD:  -- ultimately dismissed.

19         THE COURT:  All right.

20         MS. WHITE-BOYD:  So, Your Honor, I say that -- only

21 that if that plan had been confirmed because he was making the

22 monthly plan payments, essentially he may still be in that

23 house today and he still -- he would have been making payments

24 under the plan.  It was a 36-month plan.  So what ultimately

25 would have happened, but the problem is he was not given that

1  opportunity because of the sale going forward on September 1st.

2          So even if it -- even if the case had been

3  reinstated, he -- this issue still needed to have been

4  revisited because the property at that point was essentially

5  sitting in limbo, you know, during that 90-day period, so

6  nothing was happening with the property and nothing was

7  happening with the property during the time that the bankruptcy

8  case was ongoing.  It was not until after that that Emigrant

9  took action.  But, Your Honor, I think during that time just

10 simply because they were aware of the -- Your Honor's order,

11 what happened on -- in this court and the fact that they would

12 not be in a -- they would not be harmed by undoing the sale

13 because they were the successful bidder.

14          THE COURT:  And what -- just give me the date of that

15 approximately?

16          MS. WHITE-BOYD:  The date of --

17          THE COURT:  Approximately when you're -- this is --

18 when was the sale?

19          MS. WHITE-BOYD:  The sale was August 31st of '09.

20          THE COURT:  Right.  So Mr. Worrell did nothing after

21 that.  He was very worried about the sale apparently, but he

22 did nothing and eventually his case was dismissed here.

23          MS. WHITE-BOYD:  Correct.

24          THE COURT:  And he continued to litigate in the State

25 Court with multiple appeals, but he chose not to do anything

1   here for four and a half years until he was done with every

2   possible appeal and the Florida Supreme Court had determined

3   not to hear his matter because it was dismissed.  And then he

4   figures I'll come back to the Bankruptcy Court where he gave a

5   very impassioned presentation on his own.  And I said if

6   there's really a violation of the stay here, let's hear about

7   it because I did not have sufficient facts before me and now

8   you filed a complaint.  He went and found capable lawyer,

9   there's a complaint on file and you had time to look at it

10  after receiving a 9011 motion which I'm going to get to last

11  today.  But there doesn't appear to be a claim.  So, all right,

12  I'm going to rule on the motion to dismiss.  Why don't you have

13  a seat?  Okay.

14          First, it's fairly obvious even from the allegations

15  in the complaint itself I do not need to look elsewhere at the

16  record, from the allegations in the complaint itself that the

17  automatic stay was not in effect at the time the foreclosure

18  sale in question was completed.  The debtor had -- the debtor's

19  case had been dismissed so there was no automatic stay and

20  there certainly was no existing order under the Soldiers' and

21  Sailors' Relief Act which is not relevant here anyway for

22  purposes of my ruling.  But there was no stay in effect in this

23  court or as a result of a pending case in this court under

24  Section 362 at the time the debtor sought to reinstate what was

25  at the time a Chapter 13 case.

1        The motion to reinstate asks both to reinstate the

2   case and also for the Court to impose a stay under the

3   Soldiers' and Sailors' Relief Act.  Neither the motion, nor the

4   notice of hearing were provided to Emigrant.  There's nothing

5   in the record to show that they had notice.  There's no

6   allegation in the complaint that they have actual notice.  Even

7   the lender, according to the complaint, did not have any notice

8   of the fact that this Court had a hearing on the debtor's

9   request to reinstate the case and also impose the Independence

10  Day under federal statute.

11        This was acknowledged even during the hearing, by the

12  way, so it's on the record in the hearing that I held.  This is

13  now six plus years ago, I believe, that there was not notice to

14  the lender.  Somebody should have been providing notice to the

15  lender.  The sale was happening quite soon thereafter.  It's

16  not the Court's duty to figure out who to provide notice to.

17  There was, in fact, no notice and the sale happened.  There was

18  no written order at the time that the sale happened.

19        The Court's oral indication during a hearing that a

20  motion will be granted is not an order of the Court.  It's not

21  an order of the Court until it's reduced to writing and placed

22  in the Court's docket.  So that oral ruling or the fact that I

23  indicated that the Court would grant the motion and what would

24  happen had no impact to reinstate the case and did not result

25  in imposition of the automatic stay or for that matter a stay

1   of actions within this case, which again is not relevant, under

2   the Soldiers' and Sailors' Relief Act.

3        The written order was not entered until the day after

4   the sale was completed and this is conceded.  It was conceded

5   in the complaint.  That is when the order became effective.

6   And, yes, there was a stay for 90 days under the Soldiers' and

7   Sailors' Relief Act.  Again, not important here because that's

8   a stay of actions only within this case.  And the automatic

9   stay was imposed as of the moment that that order was entered

10  on the docket of this Court.

11       The reinstatement of a bankruptcy case or even the

12  vacating of an order dismissing a bankruptcy case does not

13  result in the retroactive reimposition of the automatic stay.

14  Now in the last five years or so, I've gotten in the habit of

15  actually saying this in ever order that I enter, specifically

16  saying that the stay is imposed only as of the entry of the

17  order and that there was no stay in effect in the meantime.

18  And I say that because if it did have retroactive effect under

19  law in this circuit anything that happened in violation of the

20  stay would be retroactively void.  We'd have lots of terrible

21  problems.  In fact, there's in this particular case a very good

22  example.  No one has suggested that we don't have bona fide

23  purchasers of the property.  They would be retroactively

24  relieved of title.  That cannot happen.  Parties need to be on

25  notice, due process needs to be served.  There would be a

1  constitutional issue raised.

2         So the automatic stay did not exist until after the
3  sale was completed.  And so the sale was not a violation of the
4  automatic stay, nor, by the way, was Emigrant required to
5  attempt to undo the sale.  There are circumstances where, for
6  example, a party receives notice of the imposition of the stay
7  as the result of filing of a bankruptcy case which is actually
8  on file and fails to prevent a sale which they could have
9  prevented.  That is not what happened here.  Not only did the
10  stay not exist on the sale date, but the party in question
11  didn't know about the existence of the order until after the
12  order was entered which was now several days later.  There is
13  no duty to go back and undo something.  There's a duty
14  potentially to prevent things from happening, but that nothing
15  of that ilk is even alleged in this particular case.

16         So there simply was no automatic stay and, therefore,
17  no violation of the stay and the entire complaint, even the
18  amended complaint as it currently sits, is dependent on that.
19  That is the foundation for the complaint.  You can't have a
20  willful violation of the stay unless there was a stay in place.
21  You can't say that some of the relief requested includes
22  finding that a sale should be undone based on the violation of
23  the stay.  Well, if there is no violation of the stay, the sale
24  can't be undone.

25         On that note, let me point out that it is clear from

1  the hearing and I also thought from the order I entered
2  permitting the case to be reopened so that a complaint can be
3  filed that the sole issue to be addressed was violation of a
4  stay and things that potentially damages which are requested.
5  The other relief requested affecting title to the property
6  which although I don't say it in that specific way in the order
7  was addressed on the record at the hearing that resulted in
8  entry of that order.  That was simply not permitted.  The Court
9  did not permit the filing of a complaint to challenge who owned
10 the property and I specifically said during the hearing that I
11 would not permit that.

12        So there is no possibility for relief under the
13 complaint.  There was no stay.  There can't have been a
14 violation of something that wasn't there and none of the relief
15 that follows from the original or the amended complaint could
16 be possible in light of that fairly obvious circumstance which
17 one can tell solely from the face of the complaint.

18        Now it was argued today that it's possible that the
19 Court should set aside the sale based on another theory.  That
20 is not presented in the complaint.  I was not requested to
21 reopen the case based on that theory.  I doubt very much that
22 there is any such theory that would be -- that would result in
23 potential relief in this case.  But (a) it's not requested, (b)
24 I didn't permit the complaint to be filed under that theory and
25 so it's completely irrelevant to the current complaint, amended

1  complaint and motion to dismiss filed by Emigrant.

2        On top of all of this, the State Court had concurrent

3  jurisdiction on every single issue raised in the present

4  complaint and also on the equitable issues raised by counsel

5  today.  Based on what I've seen, it appears that the State

6  Court had the parties before it, had jurisdiction and ruled

7  multiple times and those rulings were appealed multiple times,

8  always in favor of the foreclosing party.  And so if that's the

9  case and I believe that was the case, this Court would be

10 prohibited under the Rooker-Feldman Doctrine to consider any of

11 those issues anew.

12        Even if the State Court had not actually ruled on

13 those issues, if Mr. Worrell failed to raise them, he would be

14 bound under the theory of collateral estoppel because he's

15 required to raise all defenses, including affirmative defenses,

16 or have waived them.  So either they have been ruled on or they

17 have been waived.  But, in any case, the State Court rulings

18 are also dispositive potentially under Rooker-Feldman if there

19 was an actual ruling and under res judicata if there's an

20 actual ruling and under collateral estoppel if there was a

21 failure to raise an affirmative defense.

22        So there is really no way after all of the matters

23 raised in the State Court which, again, this Court does not

24 have exclusive jurisdiction over very many things, the Court

25 under Section 1334 has exclusive jurisdiction only of the main

1  case itself, but not even on a 523(a) action, by the way.

2  You'd have to have relief from stay, of course.  But if the

3  State Court has ruled, the -- on whether any of these things

4  are defenses, then it's binding.  If the State Court didn't

5  rule, it's Mr. Worrell's problem that he didn't raise them.

6  Doesn't really matter because there is no factual basis for the

7  claim.

8        And just to make it clear, I think I've said this

9  several times, the ruling applies even to the amended

10  complaint.  I'm going to dismiss the complaint with prejudice.

11  There has been no suggestion that the complaint could be

12  amended in any way within the confines of the order reopening

13  the case where there would be a valid claim against Emigrant.

14  And keep in mind that dismissal with prejudice with regard to

15  the request that the sale be undone effectively protects the

16  parties represented by Mr. Berman who I agree would, even

17  though the amended complaint no longer has them as parties,

18  would now be forced to intervene because their title to the

19  property would necessarily be impacted by the requested relief

20  and that intervention would, obviously, be granted and creating

21  exactly the circumstance that we had at the beginning of the

22  case before the complaint was amended.

23        So I will grant the motion to dismiss with prejudice.

24  That's Document 16.  I will deny Mr. Berman's independent

25  motion to dismiss because it is now moot.  And then let's go

1  onto the motion for sanctions.  What is now -- what do you want
2  me to do at this point, Mr. Berman?

3           MR. BERMAN:  Your Honor, we -- my clients have had to
4  incur a substantial amount of fees in dealing with a claim that
5  should have never been brought in our opinion.  We would
6  request that you grant the motion for sanctions and then set a
7  schedule for us to submit a declaration or some paper proof
8  with respect to the attorney's fees that have been incurred.
9  If there is an opposition, you could set an opposition deadline
10 and then either rule with a hearing or without.  I think that's
11 an appropriate procedure.

12          THE COURT:  When you say opposition, you mean with
13 regard to the amount --

14          MR. BERMAN:  The quantum.

15          THE COURT:  -- of the sanction, yes, okay.  Yes,
16 counsel.  And you can start by addressing the request itself
17 under Rule 9011 and then get onto the -- what the procedure Mr.
18 Berman just suggested.

19          MS. WHITE-BOYD:  Yes, Your Honor.  With respect to
20 the motion for sanctions, I believe we would not be here on
21 that issue, Your Honor, if -- notwithstanding the
22 miscommunication between us, Your Honor.  We were ready to and
23 prepared to dismiss against, but they adamantly, as indicated,
24 they wanted the entire case dismissed.  I mean, notwithstanding
25 the fact that Your Honor had now dismissed the case, but, Your

1  Honor, it related to just their -- I mean, their clients and

2  had we had probably thorough discussion as opposed to it simply

3  being dismissed in the entirety, we would not be here on the

4  motion for sanctions.

5      THE COURT:  Still, you could have filed that amended

6  complaint during the time period to avoid potential sanctions

7  under 9011, couldn't you?

8      MS. WHITE-BOYD:  That is correct, Your Honor, but we

9  were having discussions and we had verbal, you know, to

10 continue it, so that's --

11     THE COURT:  And it was extended and I assume you

12 agree with Mr. Berman that the amended complaint was filed

13 after whatever deadline was agreed?

14     MS. WHITE-BOYD:  Correct, Your Honor, but there was

15 also and there were e-mails which I didn't bring today, but,

16 you know, essentially you said we needed additional time to

17 get to count to get to our client regarding dismissing the case

18 in the entirety and then they filed it.  I think at some point

19 even though they'd given us the extension, we asked for an

20 additional extension and we got --

21     THE COURT:  It was not agreed.

22     MS. WHITE-BOYD:  Well, it was not -- they did not

23 deny it, Your Honor, and I think that was the issue.  They

24 said, well, we didn't know you wanted those two days, those

25 couple of days and they filed it.  So there was some

1   misunderstanding or miscommunication.  At least I said we were
2   going to be speaking with our client, give us a couple of days
3   to discuss that and then it was then filed the very next day.
4   So because, Your Honor, I believe that we in good faith had
5   been making -- having these discussions to resolve this issue
6   and maybe we would have been able to resolve it, but I do not
7   believe that it raises to the level of being sanctionable.

8           And the other reason why it's not sanctionable, Your
9   Honor, is because prior to having the December hearing pulled
10  because the order even though the order said it's just for
11  violation of stay, it was then on the record where Your Honor
12  indicated that it would be set aside.  So once we looked at
13  that and we needed to have a discussion with our client, that
14  was where essentially that could have been resolved.  So, Your
15  Honor, I believe that it doesn't raise to the level of being
16  sanctionable because we were in good faith --

17          THE COURT:  Well, let's leave out I think you're
18  saying that you did not understand the limitations of the order
19  reopening the case which is hard to believe because it says to
20  pursue a stay violation claim.

21          MS. WHITE-BOYD:  No, no, no, Your Honor.

22          THE COURT:  But let's just set that aside for a
23  moment.  How could Mr. Worrell have obtained the relief that
24  was requested which was based entirely on violation of the
25  stay?  After looking -- is there any case that says that the

1  stay is retroactively imposed when a case is reinstated or that

2  the Court's oral ruling is binding on parties without notice?

3  Is there any case on either of those things?

4            MS. WHITE-BOYD:  No, Your Honor.

5            THE COURT:  That's the problem.

6            MS. WHITE-BOYD:  But, Your Honor, we were not talking

7  about a, I mean, a dismissal of the case as to Emigrant or, you

8  know, violation of the stay, we're talking about their

9  defendants and we've --

10           THE COURT:  Mr. Berman's clients.

11           MS. WHITE-BOYD:  Mr. -- right, I'm sorry --

12           THE COURT:  Well, right.  But if you have a claim

13  against them, the whole point of the safe harbor is we give you

14  notice as the potential movant, here's our motion, you know

15  what we're going to ask for, please act within the period of

16  time and then apparently there was a discussion about extending

17  that period of time as a courtesy which happened.  I don't know

18  how long that was.  And still the matter was not withdrawn as

19  to those particular parties.

20           MS. WHITE-BOYD:  But, Your Honor, like I said, an

21  additional extension was requested.  Apparently there was some

22  misunderstanding on their part and so --

23           THE COURT:  And you thought it was granted?

24           MS. WHITE-BOYD:  Yeah, I thought it was, Your Honor,

25  and I -- we addressed that and then counsel essentially said,

1  well, we only wanted it to be dismissed in its entirety.  So,
2  Your Honor, I think the breakdown, it wasn't because of a
3  breakdown as far as willingness to dismiss as to these parties,
4  it was a breakdown in communication as far as or a
5  misunderstanding as far as what was going to be -- what the
6  issue was as far as what needed to be dismissed.  And we could
7  have resolved that, but unfortunately that was not resolved.
8          Your Honor, in filing the amended complaint, the
9  purpose was to get rid of them because essentially or remove
10 them from the action and possibly then have to ask, depending
11 on what happened today, to have the -- to amend the complaint
12 further, ask the Court's permission to amend the complaint
13 further to remove any count that would affect --
14          THE COURT:  Title.
15          MS. WHITE-BOYD:  -- the title to the property.
16          THE COURT:  Well, I mean, that -- we're not there,
17 but if you had filed the amended complaint, then they would
18 have to seek to intervene, have that granted and then file --
19 serve you with another 9011 motion.  But they don't need to do
20 that since you actually didn't remove them as parties.  What
21 was the time period between the extended safe harbor deadline
22 that was originally agreed and the timing of the filing of the
23 amended complaint?
24          MS. WHITE-BOYD:  I want to say it was about 10 days.
25 The -- do you mean the original extension that was given?  It

1   was a week extension and then counsel was out of town,

2   traveling, et cetera, so we didn't get to talk for a couple of

3   days.  It was over a weekend, so I wouldn't really count that.

4   But then when we spoke after the additional two days it was a

5   couple of days I should say specifically was requested.  It was

6   filed the next day, the 9011 motion.

7           THE COURT:  All right.  And you thought there was an

8   agreement for a further extension of the safe harbor period?

9           MS. WHITE-BOYD:  Exactly, Your Honor.

10          THE COURT:  And that's documented?

11          MS. WHITE-BOYD:  Well, it's --

12          THE COURT:  Mr. Berman is about to respond.

13          MS. WHITE-BOYD:  Yeah.

14          THE COURT:  I know, you can sit.  But that's

15  documented or not?

16          MS. WHITE-BOYD:  What's documented, Your Honor, is

17  when I then said when I received the motion for sanctions and I

18  said -- I asked for a couple of days, let me talk to my client

19  and so that's documented, but not the confirming the

20  conversation that said give me a couple of days to speak with

21  my client.

22          THE COURT:  All right.  Yes, Mr. Berman.

23          MR. BERMAN:  Briefly, Your Honor.

24          THE COURT:  Yes.

25          MR. BERMAN:  The problem here, well, first of all, I

1   don't think there's any miscommunication.  When the -- my

2   partner Seth Traub communicated with counsel about the 9011

3   motion, there was a request for, going from memory, seven or

4   ten days of additional time on top of the 21-day statutory

5   period.  We granted that.  We agreed to that.  That was

6   documented through an e-mail.  When that time came up, my

7   partner spoke with counsel about the dismissal of the complaint

8   and about working out an agreed order of dismissal.

9           And the issue then came up what was going to be

10  dismissed and were further claims going to be pursued as

11  against Emigrant.  And I raised the issue both to Mr. Traub who

12  in turn raised it with counsel whether any claim would be

13  pursued against Emigrant affecting title.  Would there be any

14  cause of action that could disrupt the chain of title and the

15  answer was yes, they were going to pursue claims against

16  Emigrant in addition to monetary damages claims under 362 and

17  that's where things broke down.

18          We were requested an additional period of time for

19  counsel to speak with her client about withdrawing all claims

20  against Emigrant, as opposed to just claims against my clients,

21  and we didn't agree to any further extensions.  Assuming there

22  was a misunderstanding, which I don't think there was, here's

23  what happened next.  An amended complaint was filed which

24  sought to disrupt my client's chain of title.  If what they

25  really wanted to do is get rid of any claim that could

1   affected -- have affected my clients, which is why my clients
2   incurred attorney's fees and costs in pursuing the opposition
3   to the complaint, they wouldn't have sued Emigrant to disrupt
4   title.  That's the problem and that confirmed, the amended
5   complaint confirmed that the debtor was unwilling to refrain
6   from pursuing claims that could disrupt title.

7          And that's why my clients initially and through
8   today, quite frankly, I had to come here, I had to prepare for
9   the hearing, I had to travel here to oppose the amended
10  complaint in which my clients are not parties which is even
11  worse because when we'd have to go through additional
12  procedural machinations to present argument to this Court, I
13  don't think there was a misunderstanding.  If you want to give
14  counsel the benefit of the doubt and give the debtor the
15  benefit of the doubt that they thought they were under some
16  enlarged period of time, the problem is they filed an amended
17  complaint which did to my clients at least as bad an attempt to
18  disrupt title as the first complaint did, maybe worse because
19  they weren't a named party.

20         So from my perspective those facts belie any
21  assertion that there was a misunderstanding about additional
22  time to be granted.  Had it been up to me, I probably wouldn't
23  have granted an enlargement initially because I thought the
24  complaint was fairly egregious given Your Honor's circumspect
25  approach in December and your instructions to the debtor which

1  I would assume counsel would have read that transcript.  But we

2  did agree to an enlargement of a period of time and the problem

3  was not only wasn't the complaint withdrawn, there was no

4  order, agreed order of dismissal entered, they amended the

5  complaint to pursue the exact same belief, just not against my

6  clients, but it would have affected my clients anyway.

7         THE COURT:  Understood.  I think the only way to

8  avoid the relief requested under this motion is to argue, and

9  it is argued to some extent in the response filed at ECF 29, is

10 to argue that the claim presented in the complaint, the

11 original complaint, were warranted by existing law, which they

12 are not, or by non-frivolous argument for the extension,

13 modification or reversal of existing law or the establishment

14 of new law.  And it has to be a non-frivoulous argument.

15        There are only two theories that would support the

16 relief requested in the complaint as far as I can figure.  One

17 is that the oral ruling by the Court stating that a motion will

18 be granted is immediately effective.  I'm not aware of any case

19 that says that.  That would create all kinds of terrible

20 problems because I have to tell you personally I have said

21 things in court and then gone back to chambers and thought,

22 gee, that really is a very bad idea and then entered a written

23 order that said the opposite.  And if my ruling from the bench

24 were automatically binding on everybody, that would present

25 some problems.

1          I have in other cases with a party present who had
2   notice and due process was afforded said do you understand that
3   you are governed by this right away and I'm going to enter an
4   order and it will come out today or tomorrow or the next day
5   and it will say it was effective today at noon and you're going
6   to be bound by it and have them agree on the record.  That's a
7   little different.  That didn't happen here.  There was no due
8   process.  I'm not aware of a single case that would say that a
9   ruling made on the record without any notice to an affected
10  party without even an allegation that they had actual notice is
11  somehow binding on that party.  So I don't think there is any
12  non-frivolous argument if that's the case.

13         The other is I'm also not aware of any decision in
14  any Bankruptcy Court in the United States that says that the
15  reinstatement of a case retroactively imposes the automatic
16  stay.  Now there might be one, there might be one.  That is a
17  terrible outcome.  I can't imagine anybody thinking that was an
18  appropriate circumstance unless something very unusual had
19  happened in the case where there was something fraud-like on
20  the part of a party who was affected by the stay or would have
21  been affected by the stay in the meantime.  I think it would be
22  a set of equitable circumstances certainly not present here and
23  definitely not alleged and I think I'm creating that case in my
24  mind.

25         If that was the case that we had here and some

1  shenanigans were going on by Emigrant or others that was

2  suggested, maybe I would think otherwise.  But I cannot believe

3  that there is a non-frivolous argument that the stay was

4  retroactively imposed.  And those are the only two bases for

5  the Court to be able to say that a stay affected the sale that

6  happened in this case in any regard.  And so in my view Rule

7  9011 was violated.  The safe harbor was complied with, was, in

8  fact, extended.  It's not suggested by counsel that there's

9  actually an agreement for further extension.  There was hope

10 that there would be a further extension.  The amended complaint

11 was filed late and so sanctions will be awarded.  What I'm

12 going to do, Mr. Berman, is permit you -- is a week sufficient

13 to file an affidavit?

14          MR. BERMAN:  Yes, Your Honor.

15          THE COURT:  Okay.  A week from tomorrow to file an

16 affidavit and then -- and the sanction will be joint and

17 several, by the way, with client and the firm and you may

18 respond with regard to the amount and I'll give you 10 days

19 after the filing of the affidavit.  I'll do an order to that

20 effect.  Yes, anything else?

21          MS. WHITE-BOYD:  Your Honor, and I know we just

22 discussed this as far as with respect to the sanctions motions,

23 Your Honor, and if I may approach I just wanted to show

24 the -- show Your Honor the e-mail that went to Mr. Berman and

25 Mr. Traub concerning --

1          THE COURT:  Oh, why don't you show it to Mr. Berman

2     and then I'm glad to look at it if you think it's relevant.

3                (Court spoke on another matter)

4          MS. WHITE-BOYD:  May I approach, Your Honor?

5          THE COURT:  Yes, please.  Hand it to Ms. Klopp.

6     Thank you.  All right.  So we have -- what would you like me to

7     look at?

8          MS. WHITE-BOYD:  On the third page, Your Honor,

9     that's the e-mail that went to Mr. Traub and Mr. Berman.

10         THE COURT:  So this is your agreement to dismiss them

11    from the complaint?

12         MS. WHITE-BOYD:  That's correct, Your Honor.

13         THE COURT:  All right.  And this is Friday, March

14    18th.  Is that within the agreed time period for the --

15    extended time period for the safe harbor?

16         MS. WHITE-BOYD:  Yes, Your Honor.

17         THE COURT:  Okay.  Mr. Berman, what's your response?

18    It says please send me an agreed order.

19         MR. BERMAN:  Right.  And I think that's when the

20    discussion occurred between Mr. Traub and Ms. Boyd-White (sic)

21    about having an order that dismissed all claims affecting

22    title, not just claims directed against the bona fide

23    purchasers and the response was we can't do that or I don't

24    know if we can do that because we have to get with our clients.

25    So there was no agreement to dismiss the claims affecting

1   title.

2           THE COURT:  Well, but they -- she wrote to you and

3   said I am agreeing to your motion to dismiss, send me an agreed

4   order.  Isn't that doing away with the thing that the current

5   complaint?  I admit your client would still be in a difficult

6   situation and would be forced then to intervene and then to

7   seek further relief from the Court which would likely be

8   granted, but it's still --

9           MR. BERMAN:  We --

10          THE COURT:  -- an agreement effectively to withdraw

11  the complaint as to your client.

12          MR. BERMAN:  We prepared or I think we did -- I don't

13  know if we prepared an actual order.  I think we may have

14  prepared a proposed dismissal or certainly discussed the terms

15  of it and the problem was the claims would continue against

16  Emigrant affecting title.  And so simply taking my clients'

17  names out of the mix didn't change the relief that was being

18  sought against them.  They just wouldn't be named parties.  And

19  the amended complaint which was subsequently filed confirmed

20  that that was their intention.

21          I don't think the e-mail changes anything.  I'm happy

22  to get the responsive e-mail from my partner to Ms. White-Boyd,

23  but I've seen the e-mail traffic back and forth.  I looked at

24  it before we filed the motion for sanctions.  I was aware of

25  the communications and the requests and the response we got

1  back was we're still pursuing claims against Emigrant to set

2  aside the foreclosure sale.  And that didn't resolve the

3  problem that my client was facing and it continued to be in

4  violation of your clear direction on December 16th of 2015 and

5  I think that's ultimately the problem.

6         THE COURT:  I'd like to see the remainder of the

7  e-mail correspondence --

8         MR. BERMAN:  Certainly.

9         THE COURT:  -- if it's relevant.  All right?

10         MR. BERMAN:  I can file those with the declaration if

11  you want.

12         THE COURT:  Yes, that would be great.

13         MS. WHITE-BOYD:  There is one part of the e-mail,

14  Your Honor, that's before the couple of days was requested and

15  if you look at the second page where it says my apologies for

16  the delay in responding, as you know, and it says can we

17  discuss the form of the order.  The only discussion, Your

18  Honor, and I guess we'd have to be here with Mr. Traub, but was

19  with respect to dismissing it entirely, dismissing the case

20  entirely.  There was no specifics as to title.  We did not have

21  that discussion.  And the confirming additional e-mail will

22  actually indicate that they were only seeking to dismiss the

23  case entirely and we can provide the remaining e-mails

24  concerning that your -- because once the motion for sanctions

25  was filed and it took me off guard and I sent an e-mail, so

1   that would be the additional e-mail that we have.

2           THE COURT:  All right.  I'd like to see all the

3   correspondence because I want to know what was agreed when

4   before I determine that the plaintiff failed to live up to the

5   safe harbor.  All right.  Will you all prefer that I have a

6   continued non-evidentiary hearing and you can agree on what I

7   look at ahead of time?  That might be useful.  I could set a

8   hearing out a couple weeks and have you file whatever you want

9   me to look at, one of you agreed ahead of time and then I can

10  consider it and you can also file your affidavit in the

11  meantime.  Acceptable?

12          MR. BERMAN:  That works for me, Your Honor.

13          MS. WHITE-BOYD:  I -- that's acceptable, Your Honor.

14          THE COURT:  Okay.  I'll do an order setting a

15  schedule for that.  Anything else today?

16          MS. WHITE-BOYD:  So just to be clear --

17          THE COURT:  Only on the 9011 motion.

18          MS. WHITE-BOYD:  Right.

19          THE COURT:  Yes.

20          MS. WHITE-BOYD:  So just to be clear, Your Honor,

21  just do a notice of filing and file the --

22          THE COURT:  I'll have an order which says exactly

23  what to do.

24          MS. WHITE-BOYD:  Okay.

25          THE COURT:  Tell you to file any correspondence or

1  other documents you want the Court to consider and I want you

2  to agree that I'm to look at this so I can consider it as

3  evidence.  If there's a disagreement, let me know somehow

4  before the hearing.  I'll set a continued hearing.  I'll also

5  in the meantime permit Mr. Berman to file an affidavit with

6  fees and costs and you may respond to it so I can deal with it

7  all at once.

8            MS. WHITE-BOYD:  Okay.

9            THE COURT:  And we'll do it not on a motion calendar

10 day.

11           MS. WHITE-BOYD:  Yes, Your Honor.

12           THE COURT:  Okay.  Yes.

13           MR. BERMAN:  I had one follow up point on the motion

14 for sanctions.  You said I think two or three times that we

15 would file an affidavit.  Is a declaration acceptable?

16           THE COURT:  Yes, absolutely.

17           MR. BERMAN:  Okay.

18           THE COURT:  Yes.

19           MR. BERMAN:  And the second question I had related to

20 the motions to dismiss.  May I be heard on that briefly?

21           THE COURT:  Sure.

22           MR. BERMAN:  I just wanted to make sure, and I assume

23 that there is going to be some preparation of orders by counsel

24 for Emigrant and I wanted to make sure that the Court can be

25 clear in those orders that the foreclosure sale which occurred

1    and the subsequent issuance of title have not been set aside

2    and are good, valid and this Court's determinations are not

3    affecting those.  We, obviously, have a cloud on title and

4    we're going to need to record this order and I would like to

5    make sure that whatever order dismisses the complaint with

6    prejudice makes clear that this Court's decisions are not

7    affecting title.

8              THE COURT:  That is fine with me.  Why don't you

9    provide some language to counsel for Emigrant and then when you

10   submit the order I'll have a look at it?

11             MR. BERMAN:  Thank you, Your Honor.

12             THE COURT:  Okay.  Thank you, everyone.

13             MR. DAVIS:  Your Honor, I'm sorry.

14             THE COURT:  Yes.

15             MR. DAVIS:  You want me to prepare the order on the

16   dismissal?

17             THE COURT:  Please, correct.  And I'll have a look at

18   it.  Say for the reasons stated on the record and then you may

19   include the provisions that you're going to receive from Mr.

20   Berman and when you submit that by eOrders, Ms. Klopp will get

21   it to me and I'll see whether I am comfortable with what is

22   contained in the order.

23                         (Pause)

24             THE COURT:  Are we all set?

25             MR. DAVIS:  Your Honor, I was wondering on the order

1 rather than saying for the reasons stated on the record, would

2 it be possible for us to get the transcript fairly soon so that

3 we could then just incorporate Your Honor's language?

4          THE COURT:  You may attempt to do that if you wish.

5 That's perfectly fine with me.  It wasn't as -- since I didn't

6 write it all out, it was maybe a little repetitive and circular

7 and you're welcome to edit it without changing the substance of

8 anything.

9          MR. DAVIS:  Of course.

10          THE COURT:  Okay.

11          MR. DAVIS:  Thank you, Your Honor.

12          THE COURT:  All right.

13          MR. BERMAN:  Thank you, Your Honor.

14          THE COURT:  All right.  Thank you, everyone.

15                    * * * * *

16          **C E R T I F I C A T I O N**

17          I, KELLI R. PHILBURN, court approved transcriber,

18 certify that the foregoing is a correct transcript from the

19 official electronic sound recording of the proceedings in the

20 above-entitled matter, and to the best of my ability.

21

22 /s/ Kelli R. Philburn

23 KELLI R. PHILBURN

24 J&J COURT TRANSCRIBERS, INC.   DATE:   April 12, 2016

25